UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NGA THI HOWARD,

    *Plaintiff*,

v.

PETER J. GOODMAN, *et al.*,

    *Defendants.*

No. 20-cv-2187 (DLF)

## MEMORANDUM OPINION & ORDER

Nga Thi Howard brings this direct and derivative action on behalf of herself and Kazoo LLC, respectively, against Peter J. Goodman, Helen H. Ruan, and CA Solutions. *See generally* Am. Compl., Dkt. 18. Goodman has filed a single count counterclaim against Howard. *See* Am. Counterclaim, Dkt. 26. Before the Court are the defendants' Motions to Dismiss, or in the alternative, Motions for Summary Judgment, Dkts. 23, 24, as well as Howard's Motion to Dismiss, or in the alternative, Motion for Summary Judgment on Goodman's first amended counterclaim, Dkt. 32. For the reasons that follow, the Court will grant Howard's motion to dismiss the amended counterclaim, dismiss Howard's amended complaint for failure to join a necessary party, *see* Fed. R. Civ. P. 19, and deny without prejudice the defendants' motions.

### I.    BACKGROUND

Howard and Goodman are members and co-founders of Kazoo LLC, a "technology company" organized in the District of Columbia and dedicated to "developing a cutting-edge application . . . that provides on-scene live video streaming to allow emergency contacts and first responders to locate people in need." *See* Am. Compl. ¶ 1. On May 9, 2019, they signed an

Operating Agreement and created Kazoo LLC, establishing Kazoo's membership, shares, and other modes of operation. *Id.* ¶ 33. This business venture forms the basis of this suit.

In broad terms, Howard alleges that Goodman has impeded the development of Kazoo's technology, unlawfully shared its trade secrets, and blocked Howard's access to company information. *See id.* ¶¶ 1–9. According to Howard, Goodman allegedly gained access to the source code and shared it without permission with Ruan, the sole owner of CA Solutions. *Id.* ¶¶ 43–47. The two parties organized a consulting agreement, allegedly without Howard's knowledge or consent. *Id.* ¶ 47. Goodman then funneled money raised as part of Kazoo's crowdfunding initiatives into his, Ruan's, and unnamed third-party accounts. *Id.* ¶¶ 52–64. Allegedly to conceal his activities, Goodman then removed Howard as manager of Kazoo and blocked her access to her company email account and to company records. *Id.* ¶¶ 65–97.

Howard brings a total of ten claims against the defendants. Am. Compl. ¶¶ 103–70. Seven are derivative actions brought on behalf of Kazoo, including Breach of Fiduciary Duties against Goodman (Count I), *id.* ¶¶ 103–07; Conversion against all defendants (Count II), *id.* ¶¶ 108–15; violation of the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401, *et seq.*, against all defendants (Count III), *id.* ¶¶ 116–24; violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, against all defendants (Count IV), *id.* ¶¶ 125–35; Civil Conspiracy to Convert Funds and Misappropriate Trade Secrets against all defendants (Count V), *id.* ¶¶ 136–46; Breach of Amended Operating Agreement § 10.6 against Goodman (Count VI), *id.* ¶¶ 147–51; and Unjust Enrichment against all defendants (Count VII), *id.* ¶¶ 152–55. The remaining three are direct claims, which include Breach of Covenant of Good Faith and Fair Dealing against Goodman (Count VIII), *id.* ¶¶ 156–61; Breach of Amended Operating Agreement § 8.3 against Goodman (Count IX), *id.* ¶¶ 162–65; and Breach of Amended

Operating Agreement § 10.5(a) in violation of D.C. Code § 29-804.10 against Goodman, *id.* ¶¶ 166–70.

Goodman filed a single-count counterclaim of defamation against Howard, alleging that she intentionally, recklessly, and with willful disregard published false and defamatory statements to third parties, including other voting members of Kazoo, "in order to injure [him] in his employment with Kazoo" and "impugn his character and reputation so that [those members] would vote to remove [him] as CEO of the company." Am. Counterclaim ¶¶ 27–28, Dkt. 26. He alleges that Howard "surreptitiously sent written communications to some of the voting members of Kazoo in which she baselessly asserted that [he] had engaged in various illegal activities." *Id.* ¶ 12; *see id.* ¶¶ 13, 15 (Howard's messages to Brian Hartline and Brian Eisenberg); *id.* ¶ 18 (noting that Howard also sent a message to Steven Path, who holds an interest in Kazoo-member Pathmazing, Inc.). Goodman claims that the statements about potential criminal and civil violations, as well as a drug addiction problem, are false and were sent by Howard "to convince the other members of Kazoo to vote with her to replace [him] as CEO." *Id.* ¶ 20; *see id.* ¶¶ 12–19.

The defendants have moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, moved for summary judgment concerning all counts in Howard's complaint. Howard has also moved to dismiss under Rule 12(b)(6), or in the alternative, for summary judgment.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a

3

cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

### B. Motion for Summary Judgment

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with potential to change the substantive outcome of the litigation.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law

if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. ANALYSIS

### A. Defamation Counterclaim

In the District of Columbia, defamation requires "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007).

One recognized privilege that would negate the second element is the judicial proceedings privilege. This is "an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relationship to the proceeding." *Oparaugo v. Watts*, 884 A.2d 63, 79 (D.C. 2005) (internal quotation marks omitted). The statements need not be made to parties to the current or contemplated litigation— they can be made to third parties such as potential plaintiffs, shareholders in derivative actions, or persons who have the ability to settle or resolve a dispute. *See, e.g.*, *Messina v. Krakower*, 439 F.3d 755, 760–62 (D.C. Cir. 2006) (applying privilege to statements made to third party for purposes of settlement discussions); *Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 342 (D.C. 2001), *overruled in part on other grounds by McNair Builders, Inc. v. Taylor*, 3 A.3d 1132 (D.C. 2010) (applying privilege to statement made to shareholder about potential shareholder derivative lawsuit).

The privilege determination is a question of law for the Court to decide. *Forras v. Rauf*, 39 F. Supp. 3d 45, 55 (D.D.C. 2014). The Court assumes all facts as alleged in the Counterclaim are true, as required when considering a motion to dismiss. *Wharf, Inc. v. District of Columbia*, 232 F. Supp. 3d 9, 15–16 (D.D.C. 2017).

Howard's statements were preliminary to the case at bar because she was informing voting members of the LLC of the grounds of this case against the LLC's managing member, Goodman. The parties, however, dispute whether the statements were sufficiently "related" to the case to be covered by the privilege. First, Howard's statements regarding Goodman's alleged criminal and civil violations, including illegal narcotics use, are related to this litigation because some of those allegations form the basis of plaintiff's complaint. Further, they all could shape either the LLC's or the LLC's members' response to the litigation or settlement thereof.

Second, the recipients of Howard's emails were persons with an interest in the potential litigation. According to the operating agreement for Kazoo (Operating Agreement) supplied by Goodman, Howard, Eisenberg, Hartline Enterprises LLC, and Pathmazing LLC are voting members of Kazoo. *See* Goodman Second Mot. to Dismiss Ex. 6, at 3, Dkt. 23 (schedule of voting unitholders); Goodman Second Mot. to Dismiss Ex. 7, at 1 (showing Brian Hartline as managing member for Hartline Enterprises, LLC); Goodman Second Mot. to Dismiss Ex. 9, at 1 (showing Steven Path as authorized signatory for Pathmazing). The Operating Agreement provides that voting members of Kazoo can vote on certain enumerated actions, which include the commencement or settlement of litigation. Goodman First Motion to Dismiss Ex. 3, §§ 8.3, 8.5(a)(v), Dkt. 8. This agreement provides them with "the requisite interest in or connection to the litigation," *Messina*, 439 F.3d at 762, required under the judicial proceedings privilege because they could be in the position of voting on how the LLC was to respond to the action.

7

The fact that these members alone have insufficient voting power to take such an action does not, as Goodman suggests, *see* Def.'s Opp'n at 12–13, Dkt. 33, deprive them of *any* interest in or connection to the litigation whatsoever because they can vote their shares and potentially determine the outcome. In fact, the defendant's position would inevitably mean that *no* member with under fifty percent of the voting shares would have an interest or connection with the litigation. In an LLC such as this one where every member has under fifty percent voting power, every member could cast a vote and ultimately resolve litigation in which no member has an interest. This is sufficient to establish the immunity as a matter of law at the motion to dismiss stage.

### B. Failure to Join Necessary Party

Federal Rule of Civil Procedure 19 provides that a person subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction "must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among the existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may, as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

If such a person "has not been joined as required, the court must order that person be made a party." Fed. R. Civ. P. 19(a)(2); *see Wach v. Byrne, Goldenberg & Hamilton, PLLC*, 910 F. Supp. 2d 162, 165 (D.D.C. 2012). If a necessary party cannot be joined, the court must examine the factors in Rule 19(b) to "determine whether in equity and good conscience, the action should proceed among the parties before it, or should be dismissed, the absent person being regarded as indispensable." *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1496

(D.C. Cir. 1997) (quoting Fed. R. Civ. P. 19(b)).  A party may move to dismiss an action for failure to join a necessary and indispensable party, *see* Fed. R. Civ. P. 12(b)(7), but even if the parties have not raised it, the Court has an "independent duty to raise a Rule 19(a) issue *sua sponte*."[1]  *See Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 390 (D.D.C. 2017) (quoting *Cook v. FDA*, 733 F.3d 1, 6 (D.C. Cir. 2013)).

For at least seventy years, it has been the law that "the corporation in a shareholder derivative action is an indispensable party."  *Knop v. Mackall*, 640 F. Supp. 2d 58, 62 (D.D.C. 2009) (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523 n.2 (1947)) (reversed in part on other grounds).  This is because "the cause of action in a stockholder derivative suit is not [the named plaintiff's] but the corporation's."  *Id.* (internal quotation marks omitted).  As a result, "the corporation is the real party in interest, and the plaintiff is merely acting on its behalf."  *Id.*

Courts across the country have determined that the same reasoning applies when a plaintiff brings a derivative action on behalf of a limited liability company, or LLC, such as Kazoo.  *See Poultry Borderless Co. v. Froemming*, No. 20-cv-1054, 2021 WL 354087, at *4 (D. Minn. Feb. 2, 2021) ("A business entity, such as an LLC, is an indispensable party when a derivative claim is brought on behalf of the business entity."); *Atanasio v. O'Neill*, 235 F. Supp.

---

[1] Here, Goodman and Ruan bring motions under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim, and thus, neither defendant has explicitly moved for dismissal on the basis of failure to join a required party. *See generally* Goodman Mot. to Dismiss, Dkt. 23; Ruan Mot. to Dismiss, Dkt. 24.  But the defendants argue that Kazoo LLC must be joined to the action because of the derivative claims brought by Howard.  *See* Goodman Mot. to Dismiss at 32; Ruan Mot. to Dismiss at 23.  And Howard responds that, because Kazoo LLC would destroy diversity jurisdiction, it should not "in good conscience" be joined to the action.  Pl.'s Opp'n to Mot. to Dismiss, Dkt. 27 at 8.  The issue is thus squarely before the Court for resolution.  *Cf. Wach*, 910 F. Supp. 2d at 163 (stating that where the "asserted failure of Plaintiff to join necessary parties … [had] been fully briefed" the issue was "therefore ripe for adjudication").

3d 422, 425 (E.D.N.Y. 2017) ("In a derivative action commenced on behalf of a limited liability company . . . , the LLC itself is a necessary party under Rule 19 of the Federal Rules of Civil Procedure."); *Cook v. Toidze*, 950 F. Supp. 2d 386, 390, 393 (D. Conn. 2013) (holding that an LLC "is an indispensable party" and noting that "courts appear unanimous in concluding that the party on whose behalf a derivative claim is brought is indispensable"); *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 650 (S.D.N.Y. 2008) (concluding that an LLC had an interest in "derivative claims raised on its behalf" and thus was a necessary party); *Kroupa v. Garbus,* 583 F. Supp. 2d 949, 953 (N.D. Ill. 2008) (requiring an LLC to be named as a party in a derivative action); *Trident-Allied Assocs., LLC v. Cypress Creek Assocs., LLC*, 317 F. Supp. 2d 752, 754 (E.D. Mich. 2004) (citing *Weber v. King*, 110 F. Supp. 2d 124 (E.D.N.Y. 2000)) ("[W]here members of an LLC bring claims derivatively on behalf of the company, the company is an indispensable party.").

As in a shareholder derivative suit brought on behalf of a corporation, the LLC is the real party in interest in a derivative action, not the LLC member. *Martin v. Santorini Capital, LLC*, 236 A.3d 386, 392–96 (D.C. 2020) (holding that a member of an LLC "is not a real party in interest that can prosecute a claim on behalf of a . . . LLC"). The cause of action belongs to the LLC. *See Knop*, 640 F. Supp. 2d at 62. Further, any benefits from litigation on the derivative claims will flow directly to the LLC, not to the member, and as a result, the LLC's interests are separate from those of the individual member. *See Poultry Borderless Co.*, 2021 WL 354087, *4 ("An entity is distinct from its stockholders and holds the separate right to sue in its own name."); *see also Knop*, 640 F. Supp. 2d at 62 (explaining that because "any finding of liability would redound to [the corporation's] benefit," the corporation "claims an interest relating to the subject of the action") (internal quotation marks omitted); *cf. Headfirst Baseball LLC v. Elwood*,

No. 13-cv-536, 2014 WL 12784203, at *4 (D.D.C. Mar. 27, 2014) (holding that an LLC was not an indispensable party where "the relief sought . . . would benefit the plaintiffs, and not [the] Professional LLC"). Thus, Kazoo LLC is a necessary party because Howard alleges derivative claims on behalf of Kazoo, and the requested relief would flow to Kazoo.[2] *See Rose v. Horan*, No. 17-cv-6408, 2018 WL 4344954, at *3 (E.D.N.Y. Sept. 11, 2018).

Accordingly, it is

**ORDERED** that Kazoo LLC be joined to the action pursuant to Rule 19 of the Federal Rules of Civil Procedure. It is further

**ORDERED** that the plaintiff shall file a second amended complaint including Kazoo LLC on or before September 28, 2021, and shall promptly thereafter effectuate service on Kazoo LLC. It is further

**ORDERED** that the defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment, Dkts. 23, 24, are **DENIED WITHOUT PREJUDICE**. It is further

**ORDERED** that the plaintiff's Motion to Dismiss the First Amended Counterclaim or, in the Alternative, for Summary Judgment, Dkt. 32, is **GRANTED**.

**SO ORDERED.**

---

[2] At this juncture, the parties' arguments concerning diversity jurisdiction and the equitable factors set forth in Rule 19(b) are immaterial. *See* Goodman Second Mot. to Dismiss at 32; Ruan Mot. to Dismiss at 23; Pl.'s Opp'n at 8. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Count IV of the amended complaint presents a claim under the Federal Defend Trade Secrets Act, regardless of whether that claim will survive any future motion to dismiss for failure to state a claim. *See* Am. Compl. ¶¶ 125–35. As a result, Kazoo's joinder will not defeat the Court's jurisdiction, and the Court need not analyze the factors set forth in Rule 19(b). *See Cherokee Nation*, 117 F.3d at 1496 (explaining that a court need only examine the factors in Rule 19(b) when "a necessary party cannot be joined").

_____
DABNEY L. FRIEDRICH
United States District Judge

September 7, 2021

12