UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NGA THI HOWARD,

        *Plaintiff*,

v.

PETER J. GOODMAN *et al.*,

        *Defendants*.

No. 20-cv-2187 (DLF)

## MEMORANDUM OPINION

Nga Thi Howard brings this direct and derivative action on behalf of herself and Kazoo LLC, respectively, against Peter J. Goodman, Helen H. Ruan, and CA Solutions, with Kazoo joined as a nominal defendant. *See generally* Second Am. Compl. (SAC), Dkt. 42. Before the Court are the defendants' Motions to Dismiss, or in the alternative, Motions for Summary Judgment, Dkts. 46, 47. For the reasons that follow, the Court will grant the motions to dismiss in part and deny them in part, and the Court will deny the motions for summary judgment.

## I. BACKGROUND

### A. Factual Allegations

Howard and Goodman are members and co-founders of Kazoo LLC, a technology company organized in the District of Columbia and dedicated to "developing a cutting-edge application . . . that provides on-scene live video streaming to allow emergency contacts and first responders to locate people in need." *See* SAC ¶ 1.[1] On May 9, 2019, they signed an Operating Agreement and created Kazoo LLC, establishing Kazoo's membership, shares, and other modes

---

[1] On a Rule 12(b)(6) motion, the Court assumes the truth of material factual allegations in the complaint. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

of operation. *Id.* ¶ 34. The agreement was amended on June 22, 2020. *Id.* ¶ 36; *see* Amended Operating Agreement, Dkt. 18-3. Howard and Goodman went on to serve as the two managers of Kazoo. SAC ¶¶ 2–3.

In broad terms, Howard alleges that Goodman has impeded the development of Kazoo's technology, unlawfully shared its trade secrets, and blocked Howard's access to company information. *See id.* ¶¶ 1–9. According to Howard, Goodman gained unauthorized access to the source code and shared it without permission with Ruan, the sole owner of CA Solutions. *Id.* ¶¶ 44–52. Goodman and Ruan organized a consulting agreement, allegedly without Howard's knowledge or consent. *Id.* ¶ 48. Goodman then funneled money raised as part of Kazoo's crowdfunding initiatives into his, Ruan's, and unnamed third parties' accounts. *Id.* ¶¶ 53–65. Allegedly to conceal these activities, Goodman then removed Howard as manager of Kazoo and blocked her access to her company email account and company records. *Id.* ¶¶ 66–98. Additionally, Howard alleges that her agreed-upon ownership interest in Kazoo was not "properly calculated" and thus "incorrectly stated" in company documents. *Id.* ¶ 37.

Howard brings a total of ten claims against the defendants. SAC ¶¶ 104–171. Seven are derivative actions brought on behalf of Kazoo, including breach of fiduciary duty against Goodman (Count I), *id.* ¶¶ 104–108; conversion against all defendants (Count II), *id.* ¶¶ 109–116; violation of the District of Columbia Uniform Trade Secrets Act, D.C. Code §§ 36-401, *et seq.*, against all defendants (Count III), *id.* ¶¶ 117–125; violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836, against all defendants (Count IV), *id.* ¶¶ 126–136; civil conspiracy to convert funds and misappropriate trade secrets against all defendants (Count V), *id.* ¶¶ 137–147; breach of Amended Operating Agreement § 10.6 against Goodman (Count VI), *id.* ¶¶ 148–152; and unjust enrichment against all defendants (Count VII), *id.* ¶¶ 153–156. The remaining three

are direct claims against Goodman, which include breach of the covenant of good faith and fair dealing (Count VIII), *id.* ¶¶ 157–162; breach of Amended Operating Agreement § 8.3 (Count IX), *id.* ¶¶ 163–166; and breach of Amended Operating Agreement § 10.5(a) and D.C. Code § 29-804.10 (Count X), *id.* ¶¶ 167–171.

### B. Procedural History

Howard filed her First Amended Complaint against Goodman, Ruan, and CA Solutions on September 21, 2020. Dkt. 18. All defendants then moved to dismiss Howard's claims, or in the alternative, for summary judgment in their favor. Dkts. 22, 23. On September 7, 2021, this Court denied the motions without prejudice. First Mem. Op., Dkt. 41.[2] The Court held that Kazoo was a necessary party under Federal Rule of Civil Procedure 19 and accordingly ordered Howard to file a second amended complaint that included Kazoo as a party. *Id.* at 8–11.

Howard filed a nearly identical Second Amended Complaint adding Kazoo as a nominal defendant on September 28, 2021. Dkt. 42. Goodman, Ruan, and CA Solutions now again move to dismiss most of Howard's claims under Federal Rules of Civil Procedure 12(b)(6), or in the alternative, move for summary judgment on all counts. Goodman Mot. to Dismiss, Dkt. 46; Ruan Mot. to Dismiss, Dkt. 47.[3]

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(6) allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6)

---

[2] The Court also granted Howard's motion to dismiss Goodman's counterclaim for defamation. *Id.* at 6–8.

[3] The Court has federal-question jurisdiction over the Federal DTSA claim, 28 U.S.C. § 1331, and it has supplemental jurisdiction over the remaining claims because they "are so related to" the federal claim "that they form part of the same case or controversy under Article III," *id.* § 1367(a).

motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). An "unadorned, the defendant-unlawfully-harmed-me accusation" is not credited; likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624

(D.C. Cir. 1997). A Rule 12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

### B. Motion for Summary Judgment

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III. ANALYSIS

### A. Motion to Dismiss

The Court begins by evaluating the eight claims that the defendants have moved to dismiss under Rule 12(b)(6). These include all claims other than the derivative claims for breach of fiduciary duty (Count I) and breach of Amended Operating Agreement § 10.6 (Count VI).

#### 1. *Conversion (Count II)*

Howard brings a conversion claim derivatively on behalf of Kazoo against all defendants based on Goodman's allegedly improper transfer of certain of Kazoo's funds to himself, Ruan, and other third parties. SAC ¶ 6. Specifically, Howard alleges that Kazoo raised nearly $60,000

through the crowdfunding platform WeFunder and that Goodman then arranged for Kazoo to pay much of that money to CA Solutions and to himself. *See id.* ¶¶ 55–65. These payments, Howard asserts, contradicted Kazoo's representations in regulatory filings as to how the company would use its WeFunder-raised capital, *see id.* ¶ 58, and they amounted to a scheme for Goodman and Ruan to "funnel Kazoo's WeFunder [f]unds to themselves," *id.* ¶ 59.

These facts, taken as true, do not plausibly give rise to a claim for conversion. To bring a conversion claim, a plaintiff must allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Xereas v. Heiss*, 933 F. Supp. 2d 1, 6 (D.D.C. 2013) (citation omitted). In general, money is not personal property for purposes of a claim of conversion. *See McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013). To succeed on a claim of conversion of money, a plaintiff must be entitled to "a specific identifiable fund of money" that was seized by the defendant. *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 30 (D.D.C. 2014) (emphasis and citation omitted); *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 259 (D.D.C. 2015) ("As a general rule, money, i.e., currency, is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds." (citation omitted)). But here, at most, Howard alleges an unlawful transfer of fungible money, rather than identifiable proceeds. Although Howard repeatedly says in conclusory fashion that Goodman and Ruan improperly diverted "Kazoo's WeFunder [f]unds," SAC ¶¶ 112–114, she never alleges that the WeFunder-raised cash was segregated, that the defendants took control over a particular bank account, or that she is entitled to anything more than an "unidentified portion of a larger pool of funds" now held by the defendants. *Edwards*, 24 F. Supp. 3d at 31. Instead, Howard alleges only that Kazoo "received a total of $59,926.13 in investor funds from WeFunder," and that Kazoo then

6

paid the defendants a total of $42,863.  SAC ¶¶ 55–64.  Moreover, the payments were allegedly split across several different transactions, rather than through a single direct transfer.  *See id.*  If these facts lead to any plausible inference of wrongdoing, it is only that the defendants made wrongful payments using Kazoo's money shortly after a fundraising drive, not that they have exercised control over an identifiable set of proceeds.  *See Headfirst Baseball LLC v. Elwood*, 168 F. Supp. 3d 236, 252 (D.D.C. 2016) ("[T]he plaintiffs have not identified a specific fund of money that [the defendant] converted—they only contend that funds were stolen from [them] for [the defendant's] personal use.  As a basis for a conversion claim, this contention fails as a matter of law.").  The Court will thus dismiss the claim for conversion.

### 2. *Misappropriation of Trade Secrets (Counts III and IV)*

Howard next brings two different derivative claims against all defendants related to the defendants' alleged misappropriation of Kazoo's trade secrets.  These include claims against all defendants under the District of Columbia Uniform Trade Secrets Act (DCUTSA) and Federal Defend Trade Secrets Act (DTSA).  The factual basis for both of these claims is that Goodman "acquired Kazoo's source code by making false statements to an employee of" one of Kazoo's vendors, Pathmazing, and then, with Ruan, "transferred Kazoo's source code to third-party vendors for the improper purpose of developing a . . . [t]echnology to compete with Kazoo."  SAC ¶¶ 121–122.  The defendants argue that these allegations fail to lead to any plausible inference of trade secret misappropriation.  The Court disagrees in part.

The Federal DTSA and the DCUTSA each grant a private cause of action to a plaintiff who "own[s] a trade secret that is misappropriated." 18 U.S.C. § 1836(b)(1); *see also* D.C. Code § 36-403(a).  A "trade secret" includes "all forms and types" of information that "derives independent economic value . . . from not being generally known" and which "the owner . . . has taken

7

reasonable measures to keep . . . secret." 18 U.S.C. § 1839(3); *see also* D.C. Code § 36-401(4). The term "misappropriation" includes the "acquisition of a trade secret of another . . . by improper means" as well as "disclosure or use of a trade secret of another without express or implied consent" by one who "knew or had reason to know" that the trade secret was "derived from or through a person who owed a duty . . . to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5); *see also* D.C. Code § 36-401(2); *Zaccari v. Apprio, Inc.*, 390 F. Supp. 3d 103, 112–13 (D.D.C. 2019) (DTSA misappropriation standard); *Econ. Res. Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 232 (D.D.C. 2016) (DCUTSA misappropriation standard).

On each of these claims, the defendants do not contest that Kazoo's source code is a trade secret. *See* Goodman Mot. to Dismiss at 13–15; Ruan Mot. to Dismiss at 13–14. But they do dispute both of Howard's misappropriation theories: first, that Goodman improperly *acquired* a trade secret that he was unauthorized to access, and second, that the defendants improperly *used* that trade secret in competition with Kazoo. The Court agrees with the defendants only as to the first.

The SAC fails to plausibly allege that Goodman unlawfully acquired Kazoo's source code. Given the allegations of the SAC, that proposition would make little sense: The source code is undisputedly "the sole property of Kazoo," SAC ¶ 42; Goodman was Kazoo's manager and President, *id.* ¶ 3; and as President, Goodman had an obligation and authority to "supervise the day-to-day operations of the company," Amended Operating Agreement § 8.4(h); *see also id.* § 8.1 (granting officers of the company "full power and authority to do all things on such term as they may deem necessary or appropriate to conduct . . . the business and affairs of the Company"). In a conclusory manner, Howard states that Goodman "was not authorized to download the source

8

code" and that he "knew" he was acting beyond his authority when he requested a zip file of the code from Pathmazing. SAC ¶ 46. But the only fact Howard alleges to support that conclusion is an excerpt from Kazoo's contract with Pathmazing that restricts *Pathmazing* employees from accessing the code. *See id.* ¶ 43. Given that the code remained Kazoo's property (and, as both sides agree, its trade secret), it makes sense that Kazoo would place constraints on its contractor's access to the source code. But nothing suggests that Goodman, as an officer of Kazoo, would have similarly been prohibited from reviewing the proprietary information of the very company he led.[4]

As for unlawful use of the code, however, the SAC provides some factual support. Howard alleges that Goodman "transferred Kazoo's source code to third-party vendors for the improper purpose of developing a [product] to compete with Kazoo." *Id.* ¶ 52. She also alleges that Goodman told Pathmazing employees only to communicate with him, that he sent a private message with false information to one Pathmazing employee requesting a copy of the code, and that he then deleted the messages. *Id.* ¶¶ 44–46, 50. And Goodman also allegedly "ceased developing" Kazoo's own technology prior to beginning his unauthorized venture with Ruan and CA Solutions. *Id.* ¶ 51. The claim thus reaches the threshold of plausibility in alleging that the defendants misused Kazoo's trade secrets.

Ruan's separate argument that she was "entitled to rely on [Goodman's] authority" to disclose trade secrets to her, Ruan Mot. to Dismiss at 10, is unpersuasive. Howard's claim rests on the proposition that "Mr. Goodman and Ms. Ruan agreed to work together to develop a new . . . technology to compete with Kazoo." SAC ¶ 47. And a claim for trade secret misappropriation

---

[4] Howard also alleges that Goodman falsely told the Pathmazing employee with whom he communicated that Kazoo was expecting a "big investment from a big company" and that Kazoo needed to perform due diligence. SAC ¶ 45; *see infra*. But that is immaterial to whether Goodman was unauthorized to review the code and thus obtained access to it unlawfully.

9

can be made against those who "knew or had reason to know" that the original source "owed a duty to [the owner] to . . . limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii); *see also* D.C. Code § 36-401(2)(B)(ii) (same). Given the facts that, if true, would suggest misuse of the code, it is plausible that Ruan, as a party to the CA Solutions agreement, would at least have reason to know of a breach of the duty of confidentiality. Accordingly, based on the allegations of misuse of Kazoo's source code, the Court will deny the defendants' motions as to Counts III and IV.

### 3. *Civil Conspiracy (Count V)*

Howard next brings a civil conspiracy claim against all defendants. "To establish a *prima facie* case of civil conspiracy, [a plaintiff] need[s] to prove: (1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of the parties to the agreement, and in furtherance of the common scheme." *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007).

The defendants argue that this claim must be dismissed because civil conspiracy is not an independent cause of action. That is true, but unhelpful to their position. "Civil conspiracy is not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Id.* (internal quotation marks and citation omitted). Although Howard lists civil conspiracy as a separate count in her Complaint, she explicitly frames it by reference to her earlier claims for conversion and misappropriation of trade secrets. SAC ¶ 146. Nothing precludes the Court from considering civil conspiracy as a means of liability.

The SAC does not state a claim for conspiracy to commit conversion because, for the reasons stated *supra* Section III.A.1, the SAC fails to state a claim for conversion. *See id.* (requiring commission of the underlying unlawful act). However, the defendants have otherwise provided no reason at this stage to dismiss the civil conspiracy count. The SAC plausibly alleges

not only misappropriation, *see supra* Section III.A.2, but also an agreement and injury, *see* SAC ¶ 47 (agreement); *id.* ¶¶ 124, 135 (harm from development of competing product).  The Court will thus deny the motion to dismiss as to Count V insofar as Howard brings a claim for conspiracy to misappropriate trade secrets.

### 4.   *Unjust Enrichment (Count VII)*

Howard also brings a derivative unjust enrichment claim against all defendants based on allegedly wrongful retention of the WeFunder funds and Kazoo's source code. This claim is analogous to Howard's claims for conversion (as to the WeFunder funds) and trade secret misappropriation (as to the source code), but it alleges unjust *retention* of Kazoo's property rather than unlawful *appropriation* by the defendants.  *See* SAC ¶¶ 153–156; *see also News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) ("Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.").

The defendants respond that the claim should be dismissed on the basis of two contracts described in the SAC—the CA Solutions Contract (between Kazoo and CA Solutions, as to the WeFunder funds) and the agreement between Kazoo and Pathmazing (as to the source code). Goodman Mot. to Dismiss at 22–23; Ruan Mot. to Dismiss at 19.  At this stage, the Court disagrees. In general, "[u]njust enrichment will not lie when 'the parties have a contract governing an aspect of [their] relation,' because 'a court will not displace the terms of that contract and impose some other duties not chosen by the parties.'"  *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (quoting *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996) (alteration in original)). But that defense to unjust enrichment is inapplicable when the contract "does not cover the issue in dispute."  *Id.*  Although the CA Solutions Contract clearly governs the schedule of payments

11

between Kazoo and CA Solutions, *see* SAC ¶¶ 49, 60, those provisions say nothing about whether the contract itself was merely a vehicle for Goodman and Ruan to "funnel Kazoo's WeFunder [f]unds to themselves," *id.* ¶ 59, even if both Kazoo and CA Solutions fully met their obligations under the contract. And the Pathmazing agreement does not even govern the relationship between Kazoo and the defendants at all; as defendants argue elsewhere, *see* Goodman Mot. to Dismiss at 15; Ruan Mot. to Dismiss at 13–14, while the agreement between Kazoo and Pathmazing clearly restricts *Pathmazing*'s use of Kazoo's code, it says nothing about the scope of authorized uses by Kazoo's officers. *See* SAC ¶ 42 (contractual provision outlining Pathmazing's duty to restrict access to the source code). Thus, neither of these two contracts is sufficient to defeat the unjust enrichment claim at the motion to dismiss stage, and the Court will allow the claim to proceed.

     5.    *Covenant of Good Faith (Count VIII)*

Howard next brings a direct claim against Goodman for breach of the covenant of good faith. According to Howard, she and Goodman "confirmed the material terms of their business arrangement," including Howard's equity stake in Kazoo, on April 3, 2019. SAC ¶ 31. Howard would receive a 30% equity stake in the company, plus 12% of the 70% stake held by another company, Orrbis. *Id.* Howard's equity interest was then allegedly "incorrectly stated" in the Amended Operating Agreement. *Id.* ¶¶ 37, 159.

These allegations do not plausibly state a claim for breach of the covenant of good faith. Under District of Columbia law, every contract includes an implied covenant of good faith and fair dealing. *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013).[5] "To state a claim for breach

---

[5] Goodman argues that "this cause of action is not recognized under District of Columbia law." Goodman Mot. to Dismiss at 23. He cites two federal cases from the early 1990s in which courts stated that the D.C. Court of Appeals had not yet clearly articulated such a cause of action. *See id.* (citing *Brown v. News World Commc'ns, Inc.*, No. 89-cv-1572, 1990 WL 137378, at *5 (D.D.C. Sept. 10, 1990); and *Crystal Prods. v. Doc Severinsen Orchestras*, No. 90-cv-932, 1994 WL

12

of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Gebretsadike v. Travelers Home & Marine Ins. Co.*, 694 F. App'x 2, 3 (D.C. Cir. 2017) (quoting *Wright*, 60 A.3d at 754). The SAC does neither. Bad faith "violate(s) community standards of decency, fairness or reasonableness," and it "requires more than mere negligence; examples include lack of diligence, purposeful failure to perform, and interference with the other party's ability to perform." *Wright*, 60 A.3d at 754 (citation omitted). But here, the SAC alleges only that after agreeing to one form of ownership structure, the parties later settled on another. Ultimately, Howard signed the Amended Operating Agreement, Dkt. 18-3 at 26, which expressly stated the number of units owned by her and other members of Kazoo, *id.* Sched. A at 2. In other words, at most, Howard alleges only that her equity percentage was miscalculated or misstated, and that she apparently agreed to the misstated figure; she never alleges any conduct amounting to bad faith. The Court will thus grant Goodman's motion to dismiss as to Count VIII.[6]

### 6. *Breach of Amended Operating Agreement § 8.3 (Count IX)*

Howard next brings a direct claim against Goodman for breach of Amended Operating Agreement § 8.3, which governs certain conditions for actions requiring the authorization of Kazoo members. Specifically, such actions can be authorized without a vote if a "consent in writing, setting forth the action" is provided to "all [m]embers entitled to vote at least 48 hours" before the

---

507546, at *4 (D.D.C. Sept. 10, 1992)). But the D.C. Court of Appeals has since expressly rejected Goodman's position. *See Paul v. Howard Univ.*, 754 A.2d 297, 310 n.28 (D.C. 2000) (describing a similar line of argument as "plainly incorrect" and noting that the District does indeed "recognize a cause of action for breach of an implied covenant of good faith and fair dealing").

[6] Howard also alleges in conclusory fashion that Goodman "improperly increased his own equity by granting himself" certain units of Orrbis without authorization. SAC ¶ 38. This threadbare accusation, made without any factual context, need not be considered. *Iqbal*, 556 U.S. at 678.

13

proposed action and then signed by enough members to authorize it. Amended Operating Agreement § 8.3.

Howard alleges that Goodman failed to timely provide the consent to members before terminating Howard's employment as manager of Kazoo. But she fails to state a claim for breach of contract because she has not plausibly alleged the required element of damages. *See Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 247 (D.D.C. 2013). Howard alleges that ahead of the action to terminate her as manager, Goodman failed to provide a written consent (the "First Consent") to her and other members of Kazoo. SAC ¶¶ 70–72. But she subsequently alleges that Kazoo thereafter twice resent the consent form to remove her as manager, and Howard never alleges that these consents were not timely provided before her removal. *See id.* ¶¶ 74–79.[7] Howard's only response—that she pled "exact dollar amounts improperly used by Mr. Goodman" and that she also "seeks declaratory and injunctive relief"—is irrelevant. Pl.'s Opp'n to Goodman Mot. to Dismiss at 21–22, Dkt. 50-1. Howard never explains why Goodman's misuse of funds is related to his alleged lack of notice under § 8.3, and her requests for injunctive relief elsewhere do not obviate the need for her to adequately plead all elements of her breach of contract claim. Additionally, Howard's conclusory allegation that "[a]s a direct and proximate

---

[7] The SAC states summarily that these two other consents were also ineffective to remove Howard as manager. *Id.* ¶¶ 78–79. But the SAC fails to allege sufficient facts to reach that legal conclusion. Howard argues that the last two consents were ineffective to remove her because Goodman allegedly manipulated Howard's equity share—and that her equity, if correctly stated, would have been sufficient to block the removal action. Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶¶ 53–54, Dkt. 50-2. But even assuming that these facts are properly contained in the SAC, Howard alleges no facts to suggest that the Amended Operating Agreement, which states her equity ownership of Kazoo, is void. Moreover, even if that were true, all three consents would then be ineffective on that basis; it is unclear from the SAC how any damages would be attributable to Goodman's failure to "provid[e] the First Consent to all Members entitled to vote at least 48 hours prior to" Howard's termination. SAC ¶ 165.

14

result of Mr. Goodman's breach, [she] has suffered damages," need not be accepted by the Court. SAC ¶ 166; *see Iqbal*, 556 U.S. at 678. The Court will accordingly dismiss Count IX.

       7.     *Breach of Amended Operating Agreement § 10.5(a) and D.C. Code § 29-804.10 (Count X)*

Finally, Howard alleges that Goodman breached § 10.5(a) of the Amended Operating Agreement and violated D.C. Code § 29-804.10 by refusing Howard's demand for certain information regarding Kazoo. Goodman does not currently dispute the merits of Howard's claim, but argues that the claim can be brought only against Kazoo, not him. Goodman Mot. to Dismiss at 27.

The Court is not persuaded. Section 10.5(a) entitles all members of Kazoo to information about the company "to the extent required by the [District of Columbia Limited Liability Company Act]." Amended Operating Agreement § 10.5(a). The section does not specify who owes the duty to furnish the information, but all members—including Goodman—are parties to the agreement. *See id.* at 31. Most instructively, D.C.'s Limited Liability Company Act, referenced by § 10.5 of the agreement, imposes a "duty to furnish information" required under the Act on "each member [of the company] to the extent the member knows any of the information." D.C. Code § 29-804.10(a)(3). Goodman cites the prior paragraph of that D.C. Code section—imposing a duty on "[t]he company," *id.* § 29-804.10(a)(2)—but he ignores the very next words extending that duty to members of the LLC as well. Goodman's arguments are thus unconvincing, and the Court will deny his motion to dismiss as to Count X.[8]

---

[8] Howard also urges the Court to deny the motion to dismiss in full under the law of the case doctrine. Pl.'s Opp'n to Goodman Mot. to Dismiss at 6–7; Pl.'s Opp'n to Ruan Mot. to Dismiss at 6–7, Dkt. 51-1. That argument is misplaced. The law of the case doctrine arises only when the "same issue" arises again in the same case. *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (emphasis omitted). This Court previously denied the defendants' motions to dismiss without prejudice but on an entirely different basis: that the plaintiff had failed to join a necessary

C.  **Motion for Summary Judgment**

In the alternative, the defendants move for summary judgment on Count I (breach of fiduciary duty), Counts III and IV (misappropriation of trade secrets), Count VI (breach of noncompete clause), Count VII (unjust enrichment), and Count VIII (breach of the covenant of good faith).  These motions are premature.

Rule 56(d) allows the court to deny or defer considering a motion for summary judgment if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The D.C. Circuit has interpreted Rule 56(d)—formerly Rule 56(f)[9]—to require an affidavit that "satisf[ies] three criteria." *Convertino v. DOJ*, 684 F.3d 93, 99 (D.C. Cir. 2012).  The affidavit must (1) "outline the particular facts [the non-movant] intends to discover and describe why those facts are necessary to the litigation"; (2) "explain why [the non-movant] could not produce the facts in opposition to the motion for summary judgment"; and (3) "show the information is in fact discoverable." *Id.* at 99–100 (internal alterations and quotation marks omitted). "Summary judgment usually is premature" where, as here, "all parties have [not] had a full opportunity to conduct discovery." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (citation and internal quotation marks omitted).

Here, Howard has met these criteria.  Her declaration outlines a number of documents that she seeks to obtain and that Goodman has allegedly refused to provide, including invoices describing the work of third parties and credit card statements related to the use of Kazoo's funds.

---

party.  *See generally* First Mem. Op. This Memorandum Opinion is the first time in which the Court has addressed the relevant issues on the merits.

[9] Although some of the D.C. Circuit's decisions discuss Rule 56(f), Rule 56(d) "carrie[d] forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

16

*See* Pl.'s Opp'n Ex. 2 (Howard Decl.) ¶ 5, Dkt. 50-3.  She also intends to depose several key witnesses.  *See id.* ¶ 22.  Howard "discuss[es] the specific facts that must be discovered to support [her] legal theory"—such as the work performed by Kazoo's vendors—and this information "*could* create a dispute of material fact" relevant to the surviving claims.  *Haynes*, 924 F.3d at 532; *see* Howard Decl. ¶ 3.  The Court thus concludes that a ruling on the summary judgment motion before any discovery is indeed premature and will accordingly deny the defendants' motions without prejudice.

## CONCLUSION

For the foregoing reasons, the Court (1) grants the defendants' motions to dismiss as to Counts II, VIII, and IX of the SAC; (2) otherwise denies the motions to dismiss; and (3) denies without prejudice the motions in the alternative for summary judgment.  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 26, 2022